UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
JOHNNY RAY CHANDLER, SR.,              )
                                                    )
                   Plaintiff,                      )
          v.                                         )          Civil Action No. 06-794  (PLF)
                                                    )
W.E. WELCH & ASSOCIATES, INC., et al.,  )
                                                    )
                   Defendants.                   )
_____)


OPINION

          This matter is before the Court on defendants' motion to dismiss the complaint for

failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.[1]  Upon consideration of the motion, the opposition, and the entire

_____

          [1]          The papers submitted in connection with this matter are: Plaintiff's Complaint;
Plaintiff's Motion to Amend Complaint and Supplement the Pleadings ("First Motion to
Amend"); Defendants' Notice of Removal of Case to United States District Court for the District
of Columbia ("Notice of Removal"); Defendants' Memorandum of Law in Support of
Defendants' Motion to Dismiss the Complaint for Failure to State a Claim upon which Relief
May Be Granted Pursuant to FED. R. CIV. P. 12(b)(6) ("Defendants' Motion"); Plaintiff's Rebuttal
Motion to the Defendants' Pending Motion to Dismiss the Complaint ("Plaintiff's Opposition");
Plaintiff's Motion to Amend Complaint and Supplement the Pleadings ("Second Motion to
Amend"); Defendants' Opposition to Plaintiff's Motion to Amend the Complaint ("Second
Motion to Amend Opposition"); Plaintiff's Request for an Extension of Time to File His
Response Motion ("Motion for Extension"); Plaintiff's Motion to Produce Evidence ("Motion to
Produce"); Plaintiff's Rebuttal to the Defendants' Motion to Dismiss the Complaint for Failure to
State a Claim ("Plaintiff's Supplemental Response"); and Plaintiff's Request for Leave to Amend
the Complaint and Supplement the Pleadings ("Third Motion to Amend").

          The filing referred to herein as the "First Motion to Amend" seeks leave to add
Kim Gipe as a defendant.  Because this motion preceded any response by defendants, and
because it is apparent that plaintiff intended for this motion to supplement his initial complaint,
the Court, like the defendants, will assume that this motion effectively amended plaintiff's initial
complaint.  See Defs.' Mot. at 1 n.1.  The Court therefore proceeds as if Ms. Gipe is a defendant
to this action.

record in this case, the Court will enter judgment in favor of defendants with respect to plaintiff's

breach of employment contract claims.  The Court will dismiss plaintiff's constitutional claims,

Section 1983 claims, and employment discrimination claims.

## I.  INTRODUCTION

Pro se plaintiff Johnny Ray Chandler, Sr. brings a variety of claims against his

former employer, W.E. Welch & Associates, Inc. ("Welch"), and Welch employees Jeff

Mahoney and Kim Gipe.  Plaintiff contends that defendants unlawfully discriminated against

him, deprived him of his constitutional rights, and violated duties imposed upon them by

Welch's employment policies when they terminated his employment.  Plaintiff seeks relief under

the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII"), Maryland's anti-

discrimination law, and Welch's official employment policies as set forth in W.E. WELCH &

ASSOCIATES, INC. MECHANICAL CONTRACTORS EMPLOYEE HANDBOOK (October 2005)

("Employee Handbook").

## II.  BACKGROUND

### A.  Facts

Plaintiff, a sheet metal worker, began working for defendant Welch in or about

October 2005.  See Defs.' Mot. at 2; Compl. at 2.  He was terminated from his position by

defendant Jeff Mahoney, his supervisor, on March 6, 2006.  See Defs.' Mot. at 2; Compl. at 2.

Plaintiff subsequently telephoned defendant Gipe, who works in Welch's human

resources department, to verify his discharge.  See Compl. at 2. Ms. Gipe verified plaintiff's

2

discharge and explained that he had been discharged "because Mr. Mahoney had written

[plaintiff] up." Compl. at 3. Plaintiff protested that he had never been informed of any of these

"write up[s]." Id. On March 7, 2006, plaintiff sent a letter to Welch's human resources

department in which he argued that his discharge amounted to "un-fair [sic] employment

termination" in "violation of the W.E. Welch Employee Handbook." First Mot. to Amend, Ex. A

at 1 ("March 7, 2006 Letter"). Plaintiff maintained that his discharge was unfair because

company policy requires supervisors to issue written warnings before firing employees, and

plaintiff had received no warnings. The March 7, 2006 Letter asked for reinstatement,

reassignment to another job site, and compensation. See Mar. 7, 2006 Letter at 2-3.

On March 17, 2006, plaintiff received his final paycheck from Welch in the mail.

See Compl. at 2. Included with that paycheck were photocopies of four employee disciplinary

reports related to plaintiff. See id. Each report documented a specific violation of company

policy by plaintiff, and each report was signed by defendant Mahoney. See id., Exs. A-D

("Employee Disciplinary Reports").[2] Although the Employee Disciplinary Reports include a

space for the employee to sign, plaintiff's signature did not appear on any of the reports. See id.

After receiving the reports, it appears that plaintiff wrote another letter to defendant's human

resources department. See Compl., Ex. E ("March 17, 2006 Letter"). Plaintiff's second letter

reiterated his earlier argument that defendant Mahoney's failure to properly issue written

warnings violated company policy. See Mar. 17, 2006 Letter at 2. Plaintiff further argued that

his discharge violated the Equal Protection Clause of the Fourteenth Amendment because

---

[2]      According to the Employee Disciplinary Reports, plaintiff committed infractions
on February 7, 2006, February 9, 2006, February 10, 2006, and March 1, 2006.

3

another sheet metal worker had received a written warning for poor performance.  See id.  He

demanded reinstatement and compensation, and he asked Welch to reprimand defendant

Mahoney and remove Mr. Mahoney from his supervisory position.  See id.  He then filed the

instant lawsuit.

### B.  Procedural History

Plaintiff filed his complaint against Welch and defendant Mahoney in the

Superior Court of the District of Columbia on March 29, 2006.  See Compl. at 1.  Plaintiff's

complaint alleged that defendants Welch and Mahoney discharged plaintiff in a manner that

constituted "Bias Discrimination," deprived plaintiff of his constitutional rights, and violated

Welch's employment polices.  See id. at 1, 4-6.  On April 5, 2006, plaintiff filed a motion

seeking to add as a defendant Kim Gipe, another Welch employee.  See First Mot. to Amend.

On May 1, 2006, defendants filed a notice of removal and removed the case to this

Court.  See Notice of Removal at 2-3 (invoking Court's diversity jurisdiction).[3]  On January 5,

2007, defendants filed the instant motion to dismiss for failure to state a claim upon which relief

may be granted.  Plaintiff filed his opposition on April 4, 2007.  On that same day, plaintiff filed

a motion to amend the complaint, seeking to add a Fifth Amendment claim for violation of his

due process rights.  See Second Mot. to Amend at 2.  Defendants opposed this motion on April

11, 2007, arguing that it was futile.  See Second Mot. to Amend. Opp. at 1.

On May 1, 2007, this Court issued an Order observing that certain parts of

---

[3]        According to defendant, "W.E. Welch is incorporated in the State of Maryland
with its principal place of business in the State of Maryland.  Defendant Jeff Mahoney is a citizen
of Maryland, and Kim Gipe is a citizen of the State of Pennsylvania.  Upon information and
belief, Plaintiff is a citizen of the District of Columbia."  Notice of Removal at 3.

defendants' motion to dismiss -- specifically, those parts addressing plaintiff's claims under

Welch's Employee Handbook -- relied upon evidence beyond the four corners of the complaint.

The Court therefore (1) converted defendants' motion to dismiss to a motion for summary

judgment with respect to those portions of the motion and (2) gave the parties an opportunity to

supplement the pleadings accordingly.  See Chandler v. W.E. Welch & Assoc., Inc., et al., Civil

Action No. 06-794, Order at 1-2 (D.D.C. May 1, 2007) ("Conversion Order") (citing Holy Land

Found. for Relief and Dev. v. Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003) (trial court abuses its

discretion when it "fail[s] to comply with the procedures set forth in the Federal Rules of Civil

Procedure" by considering materials outside of the pleadings "without converting the proceeding

to a Rule 56 proceeding and permitting [the nonmoving party] to either conduct discovery or

come forward with additional evidence")).  Defendants did not submit any further materials in

response to that Order.  Plaintiff submitted several documents.  See Mot. to Produce at 3-5

(submitting evidence of the "mandatory language" used by Welch's Employee Handbook); Pl.'s

Supp. Resp. at 4-5 (arguing that plaintiff's complaint states claims under the Constitution,

"Standard Company Policy," and Section 1983); and Third Mot. to Amend at 2 (seeking leave to

amend plaintiff's complaint to include "procedural due process" claims under the Fifth and

Fourteenth Amendments).

### III.  PRELIMINARY MATTERS

#### A.  Construing Plaintiff's Claims

　　　　　　Two of plaintiff's claims require some clarification.  First, plaintiff claims that

Welch engaged in "Bias Discrimination" because one of plaintiff's co-workers was provided

with written and verbal notice of poor performance, while plaintiff was provided with no notice before he was discharged. Compl. at 1; see also id. at 3-4. Plaintiff has not contradicted defendants' interpretation of this claim as a claim for employment discrimination based on Title VII and, perhaps, Maryland's anti-discrimination laws. See Defs.' Mot. at 6-7. Thus, the Court will address plaintiff's claim of "Bias Discrimination" as a claim of employment discrimination under applicable law.

       Second, plaintiff claims that Welch is liable for alleged violations of its own employment policies. See, e.g., Compl. at 4-6. Defendant argues that this claim should be viewed as a breach of employment contract claim. See Defs.' Mot. at 4-6. Plaintiff insists that he is not asserting a breach of employment contract claim, but rather a claim for "negligence." See Pl.'s Opp. at 2. In other words, plaintiff seems to argue that the defendants are liable in tort for their failure to follow company policy as described above. Notwithstanding plaintiff's protestations to the contrary, plaintiff's papers suggest that he *is* seeking relief under a contract theory, because he repeatedly argues that defendants are liable for violating the *terms* of the Employee Handbook. See, e.g., Compl. at 1; Mar. 7, 2006 Letter at 3; Pl.'s Supp. Resp. at 4. Moreover, as plaintiff cites no authority for the proposition that defendants' failure to observe the niceties of Welch's written warning and exit interview policies constitutes tortious conduct -- and the Court is unaware of any such authority -- the Court concludes that defendants' contract theory of plaintiff's claim is more plausible than (what appears to be) plaintiff's tort theory.[4] The Court

---

[4]     It should be noted that plaintiff's papers cannot be read as asserting a claim for the tort of wrongful discharge. Even if the Court were to invoke that claim on plaintiff's behalf, defendants would be entitled to summary judgment under Maryland or District of Columbia law because plaintiff has not -- and cannot -- allege that defendants' failure to follow the Employee Handbook violated an important and clearly expressed public policy, see Porterfield v. Mascari

will therefore address plaintiff's claim as a claim for breach of employment contract.

### B.  Plaintiff's Miscellaneous Motions

Currently pending before the Court are several miscellaneous motions filed by plaintiff.  See Second Mot. to Amend (seeking leave to add a Fifth Amendment due process claim); Mot. for Extension (seeking additional time to respond to the Court's May 1, 2007 Conversion Order); Mot. to Produce (seeking leave to submit evidence of the "mandatory language" of Welch's Employee Handbook in response to the Conversion Order); and Third Mot. to Amend (seeking leave to add a "procedural due process" claim under the Fifth and Fourteenth Amendments).  Defendant has opposed plaintiff's Second Motion to Amend.

The Court will grant plaintiff's Motion to Produce and consider the evidence submitted in that motion.[5]  The Court will deny both motions to amend because they would be futile.  See James Madison, Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  As discussed below, it is undisputed that the conduct of which plaintiff complains was private conduct, not official conduct subject to the strictures of the Fifth and Fourteenth Amendments.  Plaintiff therefore could not prevail on the constitutional claims he seeks to add.

---

II, Inc., 823 A.2d 590, 602 (Md. 2003) (generally, discharge must violate a public policy discernible "from constitutional or statutory expressions" for employer to be liable in tort), or that the sole reason for plaintiff's discharge was his refusal to follow the law.  See Kassem v. Washington Hosp. Ctr., No. 06-7161, 2008 WL 169784, at *2 (D.C. Cir. 2008) (discussing District of Columbia law).  If plaintiff intended to bring a tort claim, it is difficult to perceive the basis of that claim.

[5]    The Court will deny Plaintiff's Motion for Extension as moot because plaintiff has now responded to the Court's Conversion Order.  See Mot. to Produce; Pl.'s Supp. Resp.

## IV.  STANDARDS OF REVIEW

### A.  Summary Judgment

Defendant's court-designated motion for summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits [or declarations], if any, show that there is no genuine issue as to any material fact and that [defendant] is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); Washington Post Co. v. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). He is required to provide evidence that would permit a reasonable jury to find in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [his] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. See Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

*B. Dismissal Under Rule 12(b)(6)*

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. at 1965 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 127 S. Ct. at 2200; see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965; Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991).  The Court should "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  The Court need not, however, accept inferences drawn by plaintiffs if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiffs' legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d at 242.

## C.  Pro Se Plaintiffs

Because plaintiff is proceeding pro se, this Court reviews his pleadings under "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), and, when necessary, "examine[s] other pleadings to understand the nature and basis of [plaintiff's] pro se claims."  Gray v. Poole, 275 F.3d 1113, 1115 (D.C. Cir. 2002).

V.  DISCUSSION

*A.  Constitutional Claims*

Plaintiff argues that defendants Welch and Mahoney violated his rights under the Due Process Clause of the Fourteenth Amendment (because they failed to give plaintiff warnings before firing him) and the Equal Protection Clause of the Fourteenth Amendment (because at least one other worker was given a warning).  See Compl. at 3-4; Mot. to Produce at 4-6. Plaintiff further claims that defendant Gipe violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to ensure that he received proper warnings and failing to ensure that he received an exit interview on his last day of employment.  See First Mot. to Amend at 4-5.  None of these claims has any merit.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "mak[ing] or enforc[ing] any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  It does not govern private conduct, "however discriminatory or wrongful."  Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172 (1972) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)).  The Due Process Clause of the Fourteenth Amendment is also addressed to official conduct.  It bars states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

The conduct of which plaintiff complains was private conduct, not state action. Such private conduct does not trigger the protections of the Fourteenth Amendments.  See, e.g., Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991) ("With a few exceptions, such as the provisions of the Thirteenth Amendment, constitutional guarantees of individual liberty and

equal protection do not apply to the actions of private entities."); Harris v. Ladner, 127 F.3d 1121, 1125 (D.C. Cir. 1997). The Court will dismiss all of plaintiff's constitutional claims.

### B. Section 1983 Claims

Plaintiff argues that defendants' failure to follow the Employee Handbook, as described above, violated plaintiff's constitutional rights and thereby made defendants liable under 42 U.S.C. § 1983. See Pl.'s Supp. Resp. at 4. This argument fails.

Section 1983 does not create substantive rights, but provides a federal remedy when an individual is deprived of rights that are protected by federal law. There is a requirement of state action on the part of the alleged wrongdoer in order for liability to attach under Section 1983. See Adickes v. S.H. Press & Co., 390 U.S. 144, 150 (1970).

As discussed above, it is undisputed that Welch, Mahoney, and Gipe were not acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. The Court therefore will dismiss plaintiff's Section 1983 claims.

### C. Employment Discrimination Claims

Plaintiff argues that defendants discriminated against him in violation of Title VII and Maryland's anti-discrimination law. This claim also lacks merit.

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Maryland's anti-discrimination laws prohibit employers from discriminating on the basis of an

"individual's race, color, religion, sex, age, national origin, marital status, sexual orientation,

genetic information, or disability . . . ."  Md. Code. Ann. art. 49B § 16.

Here, plaintiff conclusorily alleges that he suffered "Bias Discrimination," Compl.

at 1, but fails to allege any facts in support of this claim.[6]  As noted above, the Court need not

accept inferences drawn by plaintiffs if those inferences are unsupported by facts alleged in the

complaint, and the Court need not accept plaintiffs' legal conclusions.  See Kowal v. MCI

Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d at 242.  Here, plaintiff

has failed to allege facts supporting an inference that Welch impermissibly discriminated against

him, and so the Court will dismiss plaintiff's employment discrimination claims.

### D.  Breach of Employment Contract Claims

Finally, plaintiff argues that defendants' failure to follow the procedures set forth

in Welch's Employee Handbook gives rise to contractual liability.  Defendants are entitled to

summary judgment on this claim.

### 1.  Choice of Law

In a diversity action, a federal district court applies the choice of law principles of

the state or jurisdiction in which it sits.  See Rafferty v. NYNEX Corp., 60 F.3d 844, 849-50

(D.C. Cir. 1995) (citing Bledsoe v. Crowley, 849 F.2d 639, 641 (D.C. Cir. 1988)); Long v. Sears

---

[6]    Again, plaintiff seems to think that defendants violated Title VII and Maryland's employment discrimination law because defendants failed to give plaintiff warnings but did warn another employee.  See Compl. at 4.  Even if true, this allegation does not support an inference that defendants discriminated against plaintiff based on any of the protected characteristics.

Roebuck & Co., 877 F. Supp. 8 (D.D.C. 1995). The District of Columbia employs a "modified

'governmental interest analysis,'" under which the court evaluates the governmental policies

underlying the applicable laws and determines which jurisdiction's policy would be most

advanced by having its laws applied to the facts in the case. Thompson v. Islam, Civil Action

No. 01-585, 2005 WL 3262926, at *4 (D.D.C. 2005). For breach of employment contract claims,

District of Columbia courts apply the law of the state in which the alleged contract was breached

because that state has the greatest interest in protecting the rights of its employees. See Rafferty

v. NYNEX Corp., 60 F.3d at 850; Hyman v. First Union Corp., 982 F. Supp. 8, 11 (D.D.C.

1997); Thompson v. Islam, Civil Action No. 01-585, 2005 WL 3262926 at *4. As the

employment contract at issue here was both made and allegedly breached in Maryland, the Court

will apply Maryland law.


### 2. Maryland Law

        In Maryland, at-will employment contracts may be terminated "at the pleasure of

either party at any time." Adler v. American Standard Corp., 432 A.2d 464, 467 (Md. 1981).

There are exceptions to this rule. If, for example, provisions in an employee handbook or other

publication "limit the employer's discretion to terminate an indefinite employment or . . . set

forth a required procedure for termination of such employment," and those provisions are

"properly expressed and communicated to the employee," then they may "become contractual

undertakings by the employer that are enforceable by the employee." Castiglione v. Johns

Hopkins Hosp., 517 A.2d 786, 792-93 (Md. Ct. Spec. App. 1986) (internal quotation marks

omitted). "Not every statement made in a personnel handbook or other publication will rise to

14

the level of an enforceable covenant," however, and "[g]eneral statements of policy are no more

than that"; they do not create contractual obligations. <u>Staggs v. Blue Cross of Maryland, Inc.</u>,

486 A.2d 798, 804 (Md. Ct. Spec. App. 1985) (internal quotation marks omitted). In particular,

"[j]ustifiable reliance [on employee handbook provisions by an employee] is precluded . . . where

contractual intent has been expressly disclaimed." <u>Castiglione v. Johns Hopkins Hosp.</u>, 517 A.2d

at 794. Clear and prominently displayed disclaimers in employee handbooks that expressly

reserve for the employer the right to discharge employees at any time are sufficient to preserve

the "at will" nature of an employment relationship. <u>See id.</u> at 793; <u>Haselrig v. Public Storage,</u>

<u>Inc.</u>, 585 A.2d 294, 300-01 (Md. Ct. Spec. App. 1991).

       Here, plaintiff relied upon language in the Welch Employee Handbook which set

forth procedures regarding (1) warnings for poor performance and (2) exit interviews. <u>See</u>

Compl. at 4-6; First Mot. to Amend at 4-6. All agree that plaintiff never received any verbal or

written warnings despite the fact that, prior to plaintiff's discharge, defendant Mahoney filed four

reports about plaintiff's performance with the human resources department. All parties also

appear to agree that plaintiff never received an exit interview. <u>See</u> Compl. at 3-4; <u>see also</u> Defs.'

Mot. at 2-3. Thus, it is undisputed that the provisions of the Employee Handbook relating to

warnings and exit interviews were not followed.

       But this is not enough to make defendants liable in contract because Welch's

Employee Handbook cannot be viewed as a contract. The Employee Handbook contains a clear

and express disclaimer -- prominently displayed in the foreword -- which states that

> neither this handbook nor any other [Welch] document, confers
> any contractual right, either express or implied, to remain in
> [Welch's] employment. Nor does this handbook guarantee any

15

fixed terms and conditions of your employment. Your
employment is for no specific designated period of time and may
be terminated at will, with or without cause and without prior
notice, by [Welch], or you may terminate your employment for any
reason at any given time.

Defs.' Mot., Ex. A at 6; see also Pl.'s Opp. (failing to dispute the existence or placement of this

language). This clear, prominent, and explicit disclaimer is sufficient as a matter of law to

preclude plaintiff's reliance upon any part of the Employee Handbook as a contractual

undertaking of his former employer. See Fournier v. U.S. Fidelity & Guar. Co., 569 A.2d 1299,

1304-05 (Md. Ct. Spec. App. 1990). Thus, the Court will grant summary judgment in favor of

defendants on plaintiff's breach of employment contract claims.

## VI. CONCLUSION

For the reasons stated above, the Court will grant defendants' court-designated

motion for summary judgment with respect to plaintiff's breach of employment contract claims.

The Court will dismiss plaintiff's constitutional claims, Section 1983 claims, and employment

discrimination claims for failure to state a claim. An Order consistent with this Opinion will

issue this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge


DATE: February 5, 2008

16